[Civ. No. 57490. Second Dist., Div. Five. June 19, 1980.]

PACIFIC COAST CLUB, INC., Plaintiff and Respondent, v. MARK JAMES BROWN, Defendant and Appellant.

[redacted]

COUNSEL

Richard A. DeSantis and Paul R. Salerno for Defendant and Appellant.

Gordon, Weinberg & Gordon and Stuart McElhinney for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Defendant and appellant Mark James Brown (Brown) appeals from an order of the trial court in favor of plaintiff and respon-

dent Pacific Coast Club, Inc. (PCC) permitting PCC to redeem improved property known as the Pacific Coast Club, (the property) upon payment to Brown of all charges required under Code of Civil Procedure section 702.

The underlying facts of this case are somewhat complicated. We have, therefore, summarized only the facts pertinent to this appeal.

On November 18, 1975, Sally Olshane (Olshane) became the record holder of the property pursuant to a grant deed dated October 23, 1975, signed by Moe Olshane, grantor.

Olshane contracted with one P. E. Lawrence for services to be performed on the property, and they were in due course completed.

On June 1, 1976, the property was transferred by Olshane to John W. Samuel. The deed was recorded on the same date. (The parties agree Samuel acted as a "straw man.")

On February 4, 1977, Olshane and Joseph J. Janota (Janota) entered into an agreement to form PCC which in turn was to own the property.

On February 11, 1977, Samuel transferred the property to PCC by a deed dated and recorded on the same date.

On April 1, 1977, Olshane filed a lawsuit in the Los Angeles Superior Court, number C195081, against Janota (hereinafter referred to as Olshane v. Janota).

Lawrence (remember him?) returns to the scene. For Lawrence's services rendered on the property, Olshane on May 13, 1977, signed a stipulated judgment that gave him a lien against the property. The judgment was entered and the lien became a reality.

On September 6, 1977, Olshane and Janota settled their differences in Olshane v. Janota by an amendment to their February 4, 1977, agreement. Pursuant to the amendment Olshane transferred her interest in PCC to Janota for the sum of $200,000 plus certain other conditions. The following day (Sept. 7, 1977) a request for dismissal of Olshane v. Janota was filed without prejudice.

Also on September 7, 1977, the sheriff sold the property under the Lawrence judgment lien to appellant Brown.

On November 11, 1977, Olshane sued PCC (Olshane v. PCC) in the Los Angeles Superior Court case number C220029.

On September 6, 1978, PCC deposited the sum of $67,153.39 with the Los Angeles County Sheriff who in turn notified Brown and demanded Brown's statement of costs pursuant to Code of Civil Procedure section 702. This section permits the judgment debtor or redemptioner to redeem the property from the purchaser within 12 months after the sale. Approximately four months later on January 5, 1979, Brown responded to the sheriff's demand by setting forth his claim for charges and expenses. In response PCC on February 5, 1979 deposited with the clerk of the superior court the additional sum of $30,033.19 as requested.

On March 19, 1979, Olshane v. PCC was settled and mutual releases are signed by the parties. Shortly thereafter the case was dismissed with prejudice.

Code of Civil Procedure section 702 further provides that if there is any disagreement between the redemptioner and the purchaser the court shall "upon affidavit or evidence satisfactory to the court...." determine the amount to be paid and upon payment of this amount by the redemptioner the clerk shall pay the amount to the purchaser upon his execution of a proper certificate of redemption, which certificate is then delivered to the redemptioner by the clerk.

The court held the hearing as required by section 702 and determined that PCC was the redemptioner and that it had properly deposited in court the amount due and owing to Brown.

It is Brown's primary contention on appeal that PCC obtained the property through "theft and fraud" and therefore had no standing as a redemptioner to repurchase the property under section 702. Brown states that he requested a jury trial on the factual issue of whether PCC had a valid deed but the trial court denied his request.

The recorded chain of title vests legal title in PCC on February 11, 1977, approximately seven months before Brown purchased the proper-

ty at the sheriff's sale. Brown, for reasons discussed later, requested the court to look behind the record chain of title and determine that PCC had received its title through a void deed. The court rejected this argument stating: "...I don't really see that it makes much difference how Mr. Janota obtained the deed or how Pacific Coast Properties [*sic*] obtained its deed.... [¶] I have been asked to take judicial notice of deeds recorded in the County Recorder's Office. Those deeds evidence a clear chain of title into the Petitioner (PCC) in this action. [¶] So how can you [Brown] have me go behind them?"

The two primary issues on appeal are: (1) was Brown entitled to challenge the validity of PCC's recorded deed and (2) if the answer is in the affirmative, was he entitled to have this issue determined by a jury?

1. Research of the first issue discloses no prior decisional law directly in point. Under different facts but germane to this issue, however, is the 1898 case of *Bennett* v. *Wilson*, 122 Cal. 509 [55 P. 390]. In this case, the real property in question was sold by the sheriff under a judgment lien to one Cole. Before the redemption period expired plaintiff (Bennett) obtained a judgment lien against the property and then redeemed it from the purchaser Cole. Plaintiff demanded a deed from the sheriff who refused on the ground that defendant (Wilson) had redeemed under a lien junior to plaintiff's. Plaintiff then sued to determine the validity of Wilson's lien, contending that the judgment deed that Wilson claimed under was obtained by fraud and collusion between Wilson and the sheriff.

The court analyzed Bennett's standing as a purchaser and held he was entitled to challenge the underlying validity of Wilson's judgment although it appeared valid on its face. The opinion states (pp. 512-513): "He [Bennett] succeeded to the rights of the purchaser,...The interest of the purchaser has been defined to be 'an inchoate right, which may be perfected into a perfect title without any further act than the execution of a deed in pursuance of a sale already made....' [T]he purchaser acquires an equitable estate in the lands, and, although conditional, it may become absolute by mere lapse of time.... [¶] ... [¶] *It seems to us very clear that the law should give to the holder of such an estate in land some appropriate proceeding by which to protect it against the operation or lien of a void judgment.*" (Italics added.)

Although it was necessary to dust off the *Wilson* case before it could be read, its wisdom and logic is just as viable today as it was before the turn of the century. The purchaser of the property at a validly and legally conducted lien sale could have better title to the property than an alleged redemptioner whose only claim is based upon a void deed. If the court had, in fact, relied solely on the recorded chain of title, it would have been wrong. The record actually disputes its own statement in this regard.

The judgment lien in our present case was against Olshane who would be, in the ordinary course of events, the redemptioner. PCC claims to be the successor in interest to her title and if it can demonstrate to the court that it legally succeeded to her title, then Brown is entitled only to the moneys due him as provided by section 702. It seems clear that PCC obtained title to the property from Olshane through dealings involving Janota and Olshane (the Feb. 4, 1977 agreement, *supra*). Brown, through his affidavits, suggests that these dealings were less than honest, or at arm's length. Support for these allegations is disclosed in the aforementioned lawsuits between Olshane and Janota and Olshane and PCC. The lawsuits demonstrate, however, that the deed to PCC was at most clouded or voidable. The lawsuits were then settled, (an additional $200,000 was paid in Olshane v. Janota). The cloud or defects against PCC's title was effectively removed. The trial court recognized this successful and ultimate determination of the problem. It stated to Mr. DeSantis, counsel for Brown: "If there is anybody who can claim that that deed was obtained by fraud, I suppose it is Sally Olshane. MR. DeSANTIS: Yes. THE COURT: All right. In looking at Case No. C195,081, which you have asked the court to take judicial notice of, the last document in the file, except for a substitution of attorneys in which Sally Olshane substitutes herself in pro per, is a dismissal without prejudice to all parties given by Sally Olshane and by the defendant and cross-complainants back and forth. [¶] As far as the other case that you have asked the court to take judicial notice of, which is Case No. C220,029, the last document in the file is a request to enter the default of Sally Olshane as the cross-defendant. [¶] So it doesn't seem to me that your client is in a position where they can start prosecuting Sally Olshane's interest. MR. DeSANTIS: Well, I don't know if we can prosecute Sally Olshane's interest, but clearly, Your Honor—THE COURT: Well, if there was fraud, what you are suggesting is that the redemptioner here isn't a proper redemptioner because of something that happened between the redemptioner and

somebody in prior title to the redemptioner, and there doesn't seem to be any question that the redemptioner did not, in fact receive title to the property based on the chain of title which has been produced by Mr. McElhinney. [¶] I have been asked to take judicial notice of deeds recorded in the County Recorder's office. Those deeds evidence a clear chain of title into the petitioner [PCC] in this action." And the trial court also states: "and he [Brown] is now going back to, in effect, try Sally Olshane's lawsuits to the extent that they are still viable or that there is anything still to be tried, and I don't know how he has the right to do that in any event."

■ It thus appears that the trial court *did* look behind the recorded chain of title and was convinced that PCC had standing as the redemptioner. If, on the other hand, it truly ignored the effect of the two lawsuits and committed error by relying solely on the recorded chain of title, it was harmless error. The two lawsuits are part of the record and for the reasons stated above demonstrate that Brown cannot prevail.

2. Although we affirm the order of the trial court, we further respond to the second issue in the event the right to a jury trial is urged some time in the future in a section 702 hearing. The section provides in part: "...the court in which the order of sale or execution was originally issued shall determine, by order duly entered in the minutes of said court, the amount required for redemption, *either upon affidavit or evidence satisfactory to the court....*" (Italics added.)

■ The Constitution has been held to guarantee a jury trial in actions triable by jury at common law. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 75, p. 2910 and cases cited therein.) Brown has not demonstrated that he would be entitled to a trial by jury at common law. Section 702 is strictly a statutory procedure for redeeming property after a sheriff's sale. In special proceedings there is no statutory right to a jury. (*County of Sacramento* v. *Superior Court* (1974) 42 Cal.App.3d 135 [116 Cal.Rptr. 602], and Code Civ. Proc., § 592.) In the cited case the court in considering a special enactment noted that the code section in question did not refer to a jury and expressly contemplated findings by "the court." A jury trial was disallowed. A similar legislative intent is found in section 702. There is no mention of a jury trial and determination of the issues is made "either upon affidavit or evidence *satisfactory to the court....*" (Italics added.)

3.   Brown actually listed nine issues on appeal. Eight of them just restate in different form the two primary issues discussed above. The remaining issue is whether there were sufficient funds paid to effect redemption in compliance with section 702.

It appears that Brown and PCC agreed that $97,143.49 was the correct figure to effectuate the redemption as required by section 702. On September 6, 1978, PCC paid $67,153.39 to the sheriff. The sheriff then notified Brown to file the additional costs and expenses being sought and shortly thereafter PCC deposited $30,033.19, making the total deposited $97,186.55 or $43.09 in excess of the amount necessary for redemption. Apparently Brown is contending that this full amount should have been deposited with the sheriff on September 6, 1978, and because it was not the redemption is improper. It appears that this issue was never raised in the court below. Not having done so Brown cannot raise it on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, p. 4264.) Whether it was or was not raised below the trial court was apparently satisfied that funds had been properly deposited as required and Brown has no convincing arguments that the court erred.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied July 15, 1980, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1980.